UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE SCHULTZ, ) | |
| ) | |
| Plaintiff, ) | Case No. 06 C 5646 |
| ) | |
| v. ) | Judge Mark Filip |
| ) | Magistrate Judge Geraldine Soat Brown |
| CITY OF BURBANK, HARRY KLEIN, ) | |
| Mayor, PAT ROACH, City Clerk, ) | |
| BURBANK CITY COUNCIL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, Magistrate Judge

Plaintiff Nicole Schultz ("Schultz") reached a settlement of her action under 42 U.S.C. § 1983 against defendant City of Burbank ("the City"). Schultz now seeks attorney's fees pursuant to 42 U.S.C. § 1988, which provides that a prevailing party in a § 1983 action may be awarded costs and reasonable attorney's fees at the discretion of the court. The parties agree that the award of costs should be $390. They also agree that Schultz's attorney, Dmitri Feofanov, should be compensated for 10.2 hours of work on the underlying § 1983 action. (Pl.'s Pet., Ex. A.) [Dkt 12.] The parties disagree about what billing rate should be used to calculate the attorney's fees. Schultz proposes a rate of $375 per hour, resulting in a total award of $4,215.[1] (*Id.*) Burbank proposes a rate of $225 per hour, resulting in a total award of $2,685.[2] (Def.'s Resp. at 4.) [Dkt 18.] For the reasons set out below, the court awards $2,907 in attorney's fees, plus the agreed amount of $390

---

[1] ($375 per hour x 10.2 hours) + $390 in costs = $4,215

[2] ($225 per hour x 10.2 hours) + $390 in costs = $2,685

for costs, for a total award of $3,297.

**Legal Standard**

The party seeking attorney's fees pursuant to § 1988 has the burden of establishing entitlement to an award and documenting appropriate hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The relevant rate in a fee-shifting case is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir. 1993). An attorney's presumptively reasonable hourly rate is generally that which he would normally charge a paying client, but for fee-shifting cases under § 1988, an attorney's rate is capped at the prevailing market rate "*for lawyers engaged in the type of litigation in which the fee is being sought*." *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) (emphasis in original).

The local market in this case, the Chicago area market, is the relevant market in determining a reasonable rate. Thus, a proposed rate in this case should be supported by evidence of Chicago market rates for civil rights litigation.

**Analysis**

Schultz asserts that a rate of $375 per hour is reasonable for her attorney's work. (Pl.'s Pet., Ex. A.) Schultz relies on the so-called "*Laffey* Matrix," used in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). Also, Mr. Feofanov provides supplemental materials in support of his proposed hourly rate, including surveys of rates charged by various Chicago law firms, retainer agreements in which Mr. Feofanov is to be paid on an hourly basis, past cases in which the court awarded fees to Mr. Feofanov, and an

affidavit from Chicago attorney Peter S. Lubin.

The *Laffey* Matrix is a table of hourly rates for attorneys and paralegals in the Washington, D.C. area prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. (Feofanov Decl., Ex. M.) [Dkt 13.] It is based on two variables: the year in which the litigation occurred and the number of years an attorney has practiced law. To determine the appropriate rate for an attorney's services using the *Laffey* Matrix, one simply locates the intersection of the row that represents the attorney's number of years in practice and the column that represents the year in which the litigation occurred. The cell at the intersection represents the reasonable rate for that attorney's services in the Washington, D.C. area.

Using the *Laffey* Matrix, Mr. Feofanov falls in the "11-19 years" experience category, and would therefore receive a rate of $360 per hour for work done in the 2005-06 period. (*Id.*) To justify a rate of $375 per hour, Mr. Feofanov argues that the Washington, D.C. rates reflected in the *Laffey* Matrix should be adjusted to reflect reasonable rates in Chicago. He bases his contention on a Northern District of California case in which a court adjusted rates from the *Laffey* Matrix to determine reasonable rates for attorneys in San Francisco. *In re HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005). In that case, the court looked to pay scales for federal judicial employees in both Washington, D.C. and San Francisco, and found that pay rates in San Francisco were 9% higher than those in Washington. *Id.* at 921-22. The court accordingly awarded each San Francisco attorney a rate equal to the *Laffey* Matrix rate plus 9%. *Id.* at 922. Applying that here, federal judicial employee pay rates in Chicago were 4% higher than those in Washington. (Feofanov Decl., Exs. N, O.) Increasing an hourly rate of $360 by 4% yields Mr. Feofanov's proposed rate of $375 per hour.

Schultz admits that the *Laffey* Matrix has not been formally adopted in this Circuit. (Pl.'s

Pet. ¶ 6.) She asserts, however, that some district courts within the Seventh Circuit have favorably considered it. (*Id.* ¶ 7) (citing *Arch v. Glendale Nissan*, No. 03 C 7297, 2005 WL 1421140 at *1 (N.D. Ill. June 7, 2005) (Pallmeyer, J.); *Sadler v. Barnhart*, No. 02 C 6891, 2004 WL 419908 at *3 (N.D. Ill. Feb. 25, 2004) (Pallmeyer, J.); *Samuel v. Barnhart*, 316 F. Supp. 2d 768, 781-82 (E.D. Wis. 2004); *Covington-McIntosh v. Mount Glenwood Memory Gardens S., Inc.*, No. 00 C 0186, 2004 WL 2700482 at *4 (N.D. Ill. Feb. 12, 2004) (Keys, M.J.); and *Embry v. Barnhart,* No. 02 C 3821, 2003 WL 22478769 at *2 (N.D. Ill. Oct. 31, 2003) (Brown, M.J.)). Notably, the courts within the Seventh Circuit which have used the *Laffey* Matrix have done so only for limited purposes, primarily for setting paralegal rates. *See, e.g., Sadler,* 2004 WL 419908 at *3; *Embry,* 2003 WL 22478769 at *2. Among the cited cases, only the courts in *Arch* and *Covington-McIntosh* considered the *Laffey* Matrix when setting attorney rates, and in both of those cases additional evidence was presented to support the proposed rate. Moreover, the defendant in *Covington-McIntosh* did not supply any opposing evidence.

Mr. Feofanov also submits his declaration, which includes a variety of materials, in support of the petition for fees. First, Mr. Feofanov presents surveys of the market rates charged by Chicago law firms that "commonly defend the type of actions brought by [his firm] (*i.e.*, complex statutory-based cases based upon consumer protection statutes)." (Feofanov Decl. at 3; *id.,* Ex. A). A 1999 report in the *Illinois Legal Times* states that partners in 19 large Chicago firms charged an average hourly rate of $309. Mr. Feofanov argues that rates have risen since that 1999 survey, and he provides a 2004 survey from the *National Law Journal* reporting that the mean hourly rates of partners in three large Chicago firms were $435, $448 and $543. While the surveys may be evidence of market rates for certain sectors of the legal profession, specifically, large to very large law firms engaged in commercial litigation, there is no evidence that those rates are appropriate for

civil rights litigation.[3]

Mr. Feofanov also supplies several recent retainer agreements for his services, although he admits that his work is primarily contingent fee-based and that being paid hourly is "rare." (Feofanov Decl. ¶ 8; *id.*, Exs. I, J, K). In agreements dated June and July, 2006, he secured a rate of $325 per hour. In an October 1, 2006 agreement, he secured a rate of $350 per hour. He argues that those agreements demonstrate the rates that he can obtain in the open market.

He also provides a number of district court opinions in which he was awarded fees based on an hourly rate of $225 in 2001 and 2002, hourly rates of $200 and $240 in 2003, and an hourly rate of $250 in 2005 and 2006.[4] (Feofanov Decl. ¶ 7) (citing *Harris v. River View Ford, Inc.*, No. 00 C 8219, 2001 WL 34671158 at *4 (N.D. Ill. Dec. 19, 2001) (Darrah, J.); *Strohmaier v. Yemm Chevrolet*, No. 01 C 1032, 2002 WL 10476 at *1 (N.D. Ill. Jan. 3, 2002) (Moran, J.); *Vyshnevsky v. Park Ridge Oldsmobile*, No. 02 C 6173, 2003 WL 21518568 at *2 (N.D. Ill. Jul. 2, 2003) (Coar, J.); *Arch*, 2005 WL 1421140 at *1; *Williams v. Viking Dodge, Inc.*, No. 05 C 5281, 2006 WL 1156396 (N.D. Ill. Apr. 26, 2006) (Darrah, J.)). He argues that the 2001 rate of $225 should be increased by 9% per annum in order to reflect increases in the consumer price index, in legal fees generally, and in his skills as a litigator. He calculates a resulting rate of $346.18, and argues that

---

[3] Mr. Feofanov correctly observes that such surveys were considered by the court in *Alliance to End Repression v. City of Chicago*, No. 74 C 3268, 1994 WL 86690 (N.D. Ill. Mar. 15, 1994) (Williams, J.) in setting rates for an award under § 1988. However, the court's conclusion after reviewing the surveys and other materials in that case was that the rates requested by the plaintiff's counsel had been correctly reduced by the magistrate judge. *Id.* at *7 n. 6. Thus, it is not clear exactly what the surveys showed relative to what the plaintiff's counsel had requested.

[4] Mr. Feofanov further asserts that he was awarded rates of $225 and $250 in the year 2004. However, he does not supply a citation or case number for the case that proves he received a $225 hourly rate, and the court cannot locate it through independent research. Similarly, the court order offered as proof of the $250 hourly rate (*see* Feofanov Decl., Ex. F) states only the total award; the court is unable to determine the hourly rate used to calculate the total award.

that is another basis for his proposed rate of $375.

Mr. Feofanov's recent retainer agreements are evidence to be considered, *Cooper*, 97 F.3d at 920, as are the rates he has been awarded by other courts. However, the retainer agreements involve representation of parties in consumer litigation (except for one case of child custody and support). The highest rate that he has received in cases in which he has been awarded fees was apparently $250 in 2006. Not surprisingly, the awards indicate an increase in rates over time. For example, on December 19, 2001, Mr. Feofanov was awarded an hourly rate of $225 per hour, *Harris*, 2001 WL 34671158 at *4, and on April 26, 2006, the same judge awarded Mr. Feofanov a fee of $250 per hour. *Williams*, 2006 WL 1156396 at *4. However, the increase was not the 9% per annum increase Mr. Feofanov suggests.

Lastly, Mr. Feofanov tenders the affidavit of Chicago attorney Peter S. Lubin. (Feofanov Decl., Ex. P). Mr. Lubin has practiced law in the Northern District of Illinois since 1983, primarily consumer protection law and commercial litigation. Mr. Lubin states that he is familiar with the reasonable hourly rates charged in the Chicago legal market, which he uses in setting the rates his firm charges. He uses the *Laffey* Matrix to set his fee in consumer protection suits involving fee-shifting. Mr. Lubin states that he has tried cases in both the Washington, D.C. area and the Chicago area, and knows the market rates charged by consumer protection attorneys in those markets. He believes that the rates in the Washington market are "similar and comparable to the Chicago market." (*Id*. ¶ 6.) Based on his knowledge of Chicago market rates, and his knowledge of Mr. Feofanov's skill as a litigator, Mr. Lubin opines that $375 is a reasonable rate for Mr. Feofanov's services in this case. (*Id*. ¶ 8.)

Opposing the rate sought by Mr. Feofanov, the City argues that the *Laffey* Matrix is not an objective measure of legal market rates in Chicago and should not be considered. The City offers

an affidavit from John B. Murphey, a civil rights litigator with 30 years experience from the Chicago area. (Def.'s Resp., Ex. B, Murphey Aff. ¶¶ 1, 4, 5, 7.) Mr. Murphey states that the local market rate for the services of a civil rights litigator with 12 years experience is between $225 and $275 per hour. Relying on that affidavit, the City argues that an hourly rate of $225 is reasonable for Mr. Feofanov's services, in light of his inexperience in the area of civil rights litigation.

In reply, Mr. Feofanov argues that he is knowledgeable about the civil rights area at issue in Schultz's claim against the City, which is a First Amendment claim arising from the Establishment Clause. He attaches a law review article that he authored on the subject, and a list of secondary sources and one legal brief that have cited his article. (Pl.'s Reply, Exs. A and B.) [Dkt 19.]

Mr. Lubin's affidavit discusses the rates for consumer protection, insurance defense, and complex commercial litigation, but does not mention rates for civil rights litigation. Conversely, Mr. Murphey's affidavit submitted by the City provides information on rates in civil rights litigation in general but does not discuss Mr. Feofanov's qualifications or opine on the specific rate appropriate for Mr. Feofanov's work in this case. Mr. Murphey suggests a range of $225 to $275 per hour for the services of a civil rights litigator with 12 years experience, but he does not address Mr. Feofanov's experience, including the issue of whether Mr. Feofanov's experience in other substantive areas might translate to a more efficient representation in this case.

The evidence shows that Mr. Feofanov has been awarded rates of $250 per hour in other fee-shifting cases, and commands a higher rate in the admittedly-rare instances when he is compensated by the hour. His law review article demonstrates that he had some prior familiarity with the subject matter of this present lawsuit, although his primary concentration is in consumer litigation. The transferability of his litigation skills and knowledge is reflected in Mr. Feofanov's success and

efficiency in resolving the present case. In light of that evidence and the fact that even the City's expert opined that $275 would be within the appropriate range, the court will award a rate of $285 per hour.

## Conclusion

For the foregoing reasons, the Plaintiff's Petition for Fees is granted. The plaintiff is awarded attorney's fees of $2,907 (calculated at a rate of $285 per hour for 10.2 hours), plus $390 for costs, for a total award of $3,297.

**IT IS SO ORDERED.**

_____
**GERALDINE SOAT BROWN
United States Magistrate Judge**

**DATED: April 10, 2007_____**